UNITED SATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHARLES OCHI<br><br>Defendant | No. 22-cr-10255-RGS |

## DEFENDANT'S SENTENCING MEMORANDUM

The Defendant, Charles Ochi, respectfully submits this memorandum in connection with his sentencing and in opposition to the Government's Sentencing Memorandum. Ochi has willingly pleaded guilty to all counts of an Indictment that charged him with one count of money laundering conspiracy, one count of conspiring to conduct an unlicensed money transmitting business, and one count of operating an unlicensed money transmitting business, in violation of 18 U.S.C. §§ 1956(h), 371, and 1960, respectively.

The crimes in which Defendant has pleaded guilty to arise from a money laundering scheme in which he became involved in through his relationship with Tochukwu Edeh. Ochi's involvement in this scheme came about through his transmission of money at the direction of Edeh. Ochi's actions within the scheme were dictated by and made at the direction of Edeh or another similar situated individual within the hierarchy of this money laundering scheme. For a majority of the time that Ochi was involved within this scheme, he was genuinely unaware of the illegality of his actions or the scheme itself. Ochi's involvement came about upon his reintroduction to Edeh in or about 2016. Ochi was never told by Edeh or anyone else that the transactions that they were facilitating involved fraud or any illegal activity. Ochi inquired into

1

the legitimacy of the operation to Edeh multiple times, to which Edeh would repeatedly assure Ochi that the entirety of the operation was in fact legitimate. The Government alleges that Ochi operated in a manner designed to conceal and to disguise the nature and disposition of the victims' funds. This is false as for a majority of Ochi's involvement within the scheme, he was not aware that his conduct was considered illegal. He was simply acting at the direction of another individual. His actions were not intentional or meant to avoid law enforcement. It was only towards the end of Ochi's involvement in the scheme that he began to be suspicious of his conduct being potentially illegal, but that suspicion was never actually confirmed.

Throughout Ochi's involvement within the scheme, he continued working at the direction of Edeh, but also began working at the direction of other individuals similarly situated to Edeh within the scheme. These individuals included Obinna Umeh and Chinedu Ozobu. The Government has alleged that Ochi essentially became an individual of similar level to those whom he had worked for, however, this is incorrect. The Government alleges that Ochi became a leader and organizer of no fewer than five money transmitters, this is also incorrect. Any transmitters who became involved through their knowing of Ochi were not recruited by Ochi and did not work under Ochi. Each transmitter worked directly under Edeh, Umeh, or Ozobu and all directions given, whether through Ochi or not, stemmed from one of those three individuals. Ochi received no benefit from the transmitters in whom the Government is alleging had been recruited and lead by Ochi. In the hierarchy of this fraudulent scheme, Ochi was of a similar level to those whom the Government is alleging Ochi recruited, organized, and lead.

The Government alleges that the Defendant's money transmitting business moved at least $1,168,189. This is inaccurate as it should not be referred to as Defendant's business since it was not, and the actual numerical value that can be attributed to Defendant's actions is much lower

than the amount alleged by the Government. The Government further alleges that Defendant kept as his cut at least $141,021 of the proceeds that he and his crew of money transmitters received and transmitted in the United States. This contention is vastly inaccurate for a number of reasons: first, the amount of money that Ochi's alleged "crew" received has no impact on the amount that Ochi would profit – Ochi did not receive any cut from transactions facilitated by those whom became involved through their knowing of Ochi; second, Ochi did not keep as his cut $141,021 – Ochi received much less as a profit than the Government is contending; and lastly, the Government is most likely aware that they are overstating the amount in which Ochi allegedly retained in profit – the Government firstly alleged that Ochi retained approximately $160,000 in their first presentence memorandum and have now lessened that amount to $141,021, thus it is evident that the Government does not have a concrete amount and will continue to lessen the alleged amount because the amounts they are contending is vastly overstated and unprovable.

It should also be noted that Ochi frequently transfers funds to Africa and to members of his family to pay for various expenses such as medical bills and schooling costs. These transactions are separate and apart from this money laundering scheme and the Court should consider such as the Government has most likely included these transactions and amounts in their calculations and estimates.

The Defendant has willingly pleaded guilty to the charges brought against him with no plea deal in place. Ochi should not be deemed as an organizer or leader in this offense and his sentencing should reflect this consideration. Upon considering the totality of the circumstances in addition to other pertinent factors of the Defendant, a sentencing level of 15 should be applied in sentencing resulting in Ochi being imprisoned for approximately 18 to 24 months at most. However, the Defense does not believe incarceration to be the recommended sentence in this

particular case. Ochi is a well-educated young man with great potential who has never been incarcerated or charged with any prior offense. He has not taken part in the alleged criminal offense for upwards of three and a half (3.5) years. Ochi is genuinely remorseful for his actions and has hopes of remitting his wrongdoings to the community by intending to pursue a career in preventing the very crimes he was allegedly involved in. Furthermore, the reasons stated herein this Memorandum will further support the Defenses sentencing recommendations.

To reiterate and add, the Defense does not believe that incarceration would be an appropriate punishment under these particular circumstances. The Defense recommends and believes that the following sentencing would be just and appropriate for the Defendant, Charles Ochi: three (3) years of probation with the requirement of restitution at an amount to be determined by the Court. The following conditions will be required of Ochi during the probationary period: submit to supervision by and report for supervision to the supervising probation officer, and also obey all directions and instructions of the supervising probation officer; continue to actively seek employment; continue to start an education program; surrender any passport to The Office of Probation and Pretrial Services; not obtain a passport or other international travel document; maintain residence and do not move without prior permission with travel restricted to Test and Massachusetts (for court and attorney consultation only); avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including co-defendants, unless in the presence of counsel, and other individuals in which the Government determines (with the exception of Ochi's wife); receive medical or psychiatric treatment; only use his true name and is prohibited from the use of any aliases or false personal identifying information; not open, or facilitate the opening of, any

bank accounts without permission of the Court; and not open, register, or incorporate, or facilitate the opening, registration, or incorporation of, any businesses.

## OVERVIEW OF CHARLES OCHI'S CONDUCT

*Background and Upbringing*

Charles Afamefuna Ochi was born on May 13, 1995, In Enugu, Nigeria to the marital union of Charles and Francesca Ochi. Ochi has one older sister, Stephanie Ochi, who currently resides in London. When Ochi was nine months old, his father was murdered. Ochi was told that his father's co-workers poisoned him because of jealousy for how successful he was, and that they could do the same to Ochi. Ochi's mother raised him and instilled the importance of family in him since a young age. Ochi has always made it a priority to send funds back to Nigeria to help support his family. He attempts to pay for his cousins and other family member's costs of schooling and any medical expense his family may need. Additionally, Ochi's mother also instilled in him the importance of education. Ochi did not have a wealthy upbringing and his Mother worked hard to support his family. Ochi made it his prerogative to do well in school and secure employment in order to make a better life for his family. After his father's murder, the family relocated to his grandmother's flat in an area of Nigeria, frequently referred to as the slums. Ochi and his family lived in poverty until his mother was able to save enough money to move back to the area of Nigeria where they previously resided prior to his father's murder.

Ochi attended high school in Nigeria, where he first became interested in math and science. Ochi committed himself to education as he viewed his ability to learn as an avenue to generate income in order to support his mother and the rest of his family. Ochi ranked in the top of his high school class, achieving the "senior perfect" award, which is given to one individual out of the entire school who displays impeccable academic achievement. Ochi was also granted

the "social perfect" award in high school, which is given to one individual out of the entire school who displays a commitment to his community and extracurriculars. After graduating from high school in 2012, Ochi relocated to London where he attended Coventry University. At University, Ochi studied business information technology. Ochi went on to graduate from University with a first class degree, meaning he achieved a 3.9 GPA, which is equivalent to a 4.0 GPA in the United States. While at University, Ochi was a peer lecturer, where he would tutor and assist fellow students who were struggling with certain courses. Ochi was always interested in continuing to further his education and even applied to multiple schools to enroll in a master's program. Ochi received a recommendation letter from the professors at University for him to attend MIT in Boston, MA. In 2016, after graduating from University, Ochi immigrated to the United States. Ochi had hopes of joining the armed forces in the US. He planned on serving in the Army then attending a master's program after being discharged.

Ochi has continued having a close relationship with his family. While Ochi was detained for this current matter, his family withheld information from him regarding the health of certain family members in order to prevent additional stress to Ochi. While Ochi was imprisoned, his uncle suddenly passed away. His uncle was one of the multiple individuals that Ochi would send money to on a monthly basis to ensure he was cared for. He was reliant on Ochi, thus upon Ochi's imprisonment, his uncle fell ill and was unable to pay the hospital bills, which inevitably resulted in his death. To this day, Ochi holds himself responsible for the death of his uncle. Ochi is extremely religious and is frequently described as a god-fearing man. Ochi made a covenant with God, where he promised that he would care for his family and friends to the best of his ability. He will always hold himself accountable for this tragedy, as he believes his uncle would still be alive today had it not been for his imprisonment and actions involving this matter. Ochi

has now taken it upon himself to care for his niece (his late uncle's daughter). Ochi shares this same attitude and guilt for the victims that he has caused harm to through his alleged involvement within this fraudulent money laundering scheme. Ochi is beyond remorseful for the harm that he has caused and deeply wishes to repent his wrongdoings and prevent individuals from suffering similar harm in the future.

Upon his release from prison, Ochi was also made aware that his mother was diagnosed with cancer. Ochi is still in disbelief of this diagnosis and prays to God every day to help his mother. Ochi is the primary caretaker for his mother and is heartbroken that this case has brought so much stress and shame upon her. Ochi wishes more than anything to be able to properly care for his mother and avoid imprisonment in order to do so. Ochi feels an enormous amount of responsibility for the wrongdoings he has committed in association with this current matter and the victims that he has harmed. Ochi deeply regrets all of his conduct in association with this case. Ochi has made it his life goal to return to the financial industry and attempt to work to prevent the type of fraud that he was allegedly involved in. He knows that he is unable to correct the mistakes that he has made but he believes that he is able to do good in the world moving forward.

*Facts of the Scheme*

The first time Charles Ochi met Tochukwu Abel Edeh was very briefly in Nigeria in 2010. Ochi met Edeh one time in Nigeria, as they both lived in the same neighborhood. Other than this brief meeting, Edah and Ochi had no interaction with one another until in or about 2016. Edah is 4-5 years older than Ochi and came to know Ochi's sister. In or about 2016, during Ochi's vacation from University in London, he visited the United States. During his visit to the U.S., Ochi's sister reintroduced Ochi to Edeh in Jacksonville, Florida. This was the second time

that Ochi and Edeh had ever met. During his time in Jacksonville, FL, Ochi began to inquire into Edeh's lucrative and expensive lifestyle. Ochi was curious how Edeh could afford all his extravagant belongings. Edeh briefly mentioned how he would facilitate transactions. Ochi inquired as to the legality of how Edeh would generate his income and these transactions, in which Edeh repeatedly assured Ochi that it was completely and entirely legal. At that point, Edeh asked Ochi some very standard information such as his name and address. When Ochi left Jacksonville and returned to Texas, where he was staying, Edeh sent Ochi the first transaction through Western Union.

Throughout the following years, Edeh would continue to send Ochi transactions of small amounts in which Ochi was able to keep a small portion of. During the entirety of this operation, Ochi was always receiving and sending transactions as explicitly directed by Edeh or another individual of similar hierarchy within the scheme to Edeh. Ochi was fully under the genuine impression that the entire operation was fully legal. Ochi never operated or managed a loose organization of bank account holders as alleged by the Government. Ochi was simply a worker under Edeh. No transmitter took direction from Ochi, nor did Ochi give any direction. Any correspondence that may be perceived as directions given by Ochi was simply Ochi relaying directions that he had received from Edeh or another individual of similar hierarchy within the scheme. Edeh was the principal orchestrator of this entire operation, Ochi was simply a worker recruited by Edeh, under the false pretenses that no illegal activity was afoot. Throughout Ochi's involvement within the scheme, he continued working at the direction of Edeh, but also began working at the direction of other individuals similarly situated to Edeh within the scheme. These individuals included Obinna Umeh and Chinedu Ozobu.

Ochi never recruited or managed another set of co-conspirators. Any transmitters that became involved, who were associated by knowing Ochi, were not recruited by any means. Transmitters who knew Ochi, including Asia Jarvis, Danielle Liggins, Diego Okeh, Darlington Ibe, and Anthony Ayodele were not recruited by Ochi but voluntarily joined to no benefit of Ochi. Each transmitter worked directly for either Edeh, Umeh, or Ozobu. All directions, whether delivered by Ochi or not, stemmed directly from one of those three individuals. Ochi was availed to Umeh and Ozobu through his relationship with Edeh. Ochi worked under and at the direction of Emeh and Ozobu as he did Edeh. Ochi would not have worked for Umeh or Ozobu had he not been involved under Edeh. Ochi had no say or implication in the amount of compensation any transmitter, including himself, would receive for a transaction. Ochi would seldom take a fee from any other transmitters transactions. Ochi did not negotiate rates of Nigerian Naira. Rates were determined solely by Edeh for the purposes of this operation. The amount of money Ochi was able to withhold from any individual transaction was arbitrarily determined at the time of transaction by either Edeh, Umeh, or Ozobu depending on which individual ordered the transaction.

Ochi was never told by Edeh or anyone else that the money that they were moving involved fraud. Ochi inquired into the legitimacy of the operation to Edeh multiple times, to which Edeh would repeatedly assure Ochi that the entirety of the operation was legitimate. The first sign that Ochi had suspicions of the illegitimacy of the operation was in or about 2018 upon Danielle Liggins receiving an unusually large sum during a transfer, equally approximately $50,000. This transaction was facilitated through Ozobu. This transaction raised such a concern for Ochi that he was compelled to attempt to have the transaction stopped for Liggins, which he did by pleading with Ozobu to allow the money to be sent back. In response, Ozobu began to

9

threaten Ochi. Ozobu said that if he had the money sent back, he "would end" Ochi. Ozobu also preceded to send Ochi his mother's phone number and threaten the safety of his family if the transaction did not go as planned. After the occurrence of this transaction Ochi stopped participating in this scheme for approximately a year until Ochi was approached by Umeh in the beginning of 2019. After not having taken part in any "transactions" for approximately a year, Umeh forcefully convinced Ochi to become involved once again. This time only for a short period of time. Ochi completed his last transaction midway through 2019 and has not been involved in any capacity since.

Multiple transactions within the Presentence Investigation Report, as well as the Government's Sentencing Memorandum, have been misconstrued to be involved with this alleged scheme, however, these transactions in fact have no connection. For the duration of Ochi's presence within the United States, he has regularly sent funds back to his family in Nigeria to pay for a multitude of expenses such as schooling fees for numerous cousins and medical expenses for family members in need. The government has construed these transactions for their involvement within this scheme, which is inaccurate. Additionally, Ochi contends that the first screenshot as depicted in the Presentence Investigation Report (also referred to as Exhibit 8.1 within the Government's Presentence Memorandum) is misleading and inaccurate. Ochi claims to have found the screenshot online and that the conversation is actually between two unknown parties. Ochi sent this screenshot to Edeh to inquire into a different matter. No transactions were ever made in association with this screenshot or messages after thereof. By August 20, 2020, the date of the alleged conversation, Ochi was no longer involved in the alleged wire fraud and other conduct as described within this suit. As of in or about the middle of 2019, Ochi seized the sending and receiving of money involving Edeh, Umeh, or Ozobu . Ochi

has not been involved in this alleged operation since this time and he has not been a part of any transaction involving this operation since that time.

All examples of transactions set forth within the Presentence Investigation Report and the Government's Presentence Memorandum, Ochi took part in solely at the direction of Edeh , Umeh, and/or Ozobu. Ochi could not have orchestrated this operation by any means without the connections and direction of Edeh, Umeh, or Ozobu. Ochi did not make decisions based on transactions or have any contact to the alleged "fraudsters" within the Presentence Investigation Report or the Government's Presentence Memorandum. Ochi was simply a worker who was regularly told what to do and reaped a small profit for doing so. The Presentence Investigation Report and the Government's Presentence Memorandum alleges that Ochi made intentional transactions in the manner that he did to avoid law enforcement. This is inaccurate. Ochi simply received directives in which he acted in accordance with. Ochi had no intention to deceive law enforcement and was just acting in accordance with the directions given to him by Edeh, Umeh, and/or Ozobu. The instructions in the screenshot between Ochi and Liggins that the government provided is not an example of Ochi's orders to Liggins in order to avoid law enforcement detection, but merely Ochi communicating the directions he was given by Edeh to Liggins. The only individuals who were concerned with avoidance of law enforcement and acted in accordance with such concern were Edeh, Umeh, and Ozobu. Ochi simply listened to instructions given.

It should be reiterated that, throughout this entire operation, Ochi only played the role of a mere worker under Edeh, Umeh, and/or Ozobu. Any actions taken by Ochi was at the direction of one of these three individiauls. In regard to the allegations set forth in Paragraph 17 of the Presentence Investigation Report, Ochi has never heard of the company "Sproxil." Additionally,

11

"Tyga" is not a friend of Ochi's. Ochi has never met Tyga and only knows about his identity solely due to Edeh. Ochi did not orchestrate or knowingly take part in the allegations as set forth in this Paragraph. Ochi was simply following the orders that were given to him by Edeh. Ochi was unaware at the time of the illegality of his conduct and was assured numerous times by Edeh that what he was taking part in was fully legal.

A further example of Ochi listening to exact instructions was also misconstrued by the government and reflected within Paragraph 27 of the Presentence Investigation Report. It was not Ochi or his wife who composed the name "Global Prime" as described in Paragraph 27 of the Report. Edeh directly instructed Ochi to use the exact name "Global Prime" and to further open a bank account in the entity's name. The Report also refers to myfixtrade.com and states that it was not an Edeh-affiliated fraud scheme. However, it was an Umeh affiliated fraud scheme, whom Ochi became involved with due to Edeh. Thus, an objective belief would construe such affiliation to be Edeh related in fact. Additionally, all the examples contained within the Presentence Investigation Report and the Government's Presentence Memorandum that construe Ochi to be anything more than a mere worker listening to the directives of Edeh, Umeh, and/or Ozobu is inaccurate, including, but not limited to, the examples set forth in Paragraphs 24-33 in the Presentence Report and the examples given within the Government's Presentence Memorandum, including the depiction of transaction. Ochi was simply given instructions to complete all these transactions and/or provide these instructions that were given to him to other individuals to complete transactions. Ochi did not make decisions. Ochi simply listened to what he was told to do. Pertaining to Paragraphs 35 and 36 of the Presentence Investigation Report, it becomes more evident of the involvement overarching presence of Edeh throughout this entire operation. It was stated by the government and reiterated throughout the Report and in these

12

particular Paragraphs that the funds would inevitably go to Edeh's used car company. Ochi did not give directions, he simply relayed directions that were given to him by Edeh and this becomes more so evident due to the fact that a regular destination for these funds is a used car company owned by Edeh.

## APPLICABLE SENTENCING GUIDELINES

The Defense does not agree with the guidelines calculation within the Sentencing Report nor the Government's recommendation within their Presentencing Memorandum. Defendant offers the following factors which he believes would warrant a departure from the applicable sentencing guidelines. Such factors have been derived from the U.S. Sentencing Commissions Guidelines Manual, §1B1.1(a)(1)-(7) (Nov. 2022) (hereinafter "USSG") and also 18 U.S.C. § 3661. In formulating a revised offense level, the Defense will utilize the offense level brought forth within the Presenting Report. That offense level is 27, rather than the overly punitive offense level recommended within the Government's Sentencing Memorandum of 30.

### *Criminal History*

USSG Section 4A1.3 provides that a downward departure may be warranted "[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." Such a departure may be warranted "if, for example, the defendant has two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period."[1]

---

[1] USSG §4A1.3, comment. (n.3).

In the matter at hand, Ochi has absolutely no criminal history. The Presentence Investigation Report states the following pertaining to Ochi's Criminal History Computation under "Part B. The Defendant's Criminal History", "[t]he total criminal history score is zero. According to the sentencing table in USSG Chapter 5, Part A, a criminal history score of zero establishes a criminal history category of I." Therefore, some departure from the sentencing guidelines is warranted due to the fact that Ochi has absolutely no criminal history. Ochi has never been arrested or charged with a crime before. The probability of Ochi committing another offense is very minimal. Ochi was not even actively committing the offense when he was detained by authorities. Ochi seized all conduct involving the operation concerning this suit in or about 2019. Therefore, it is respectfully requested that some departure from the sentencing guidelines be given due to his absolute lack of a criminal record or likelihood of reoffending.

*Other Factors*

In accordance with USSG §52K2.0 (Grounds for Departure (Policy Statement)), a court my depart from the applicable guidelines range if it finds an aggravating or mitigating circumstance "of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that, in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result in a sentence different from that described."[2]

*Minor Role in the Crime*

When a defendant is less culpable than other participants in the offense and did not play a major role in its commission, the judge should consider this and grant a downward departure.

In the matter at hand, Ochi was not an orchestrator or operator of this operation by any means. Edeh and Umeh were the two individuals that would give direction to Ochi. Ochi was not

---

[2] USSG §5K2.0(a)(1); see, e.g., United States v. Vasquez, 279 F.3d 77, 80–83 (1st Cir. 2002)

a decision maker in the operation and simply listened to directives that were given to him by either Edeh or Umeh. In any circumstance when Ochi was providing information as to who an involved individual should transfer funds to and in what increments and through what means, all of such information was priorly given to Ochi by either Edeh or Umeh. Ochi was merely communicating directions that he was priorly given, not composing the directions himself. It should be considered that the government has even alleged in their memorandum that Ochi profited the least out of any named individual profiting within their memo. It is clear that Ochi did not play a managerial or operational role in the scheme. Ochi came to the US and when he was reintroduced to Edeh, the scheme was already operational and continued to be operational after Ochi's seize of participation. It is respectfully requested that the Judge consider such a factor and depart from the sentencing guidelines due to the minor role Ochi had in this case.

USSG §3B1.2 states that "[b]ased on the defendant's role in the offense, decrease the offense level as follows: (a) if the defendant was a minimal participant in any criminal activity, decrease by 4 level, (b) if the defendant was a minor participant in any criminal activity, decrease by 2 level. In cases falling between (a) and (b), decrease by 3 level." It is believed that Defendant's involvement would be classified as in between subsections (a) and (b) of Section 3B1.2. Therefore, his total offense level should be decreased by 3 points.

*Extraordinary Family Circumstances*

When incarceration of the defendant would cause unacceptable risk and hardship to dependents under their care, such as children or elderly parents, and alternative options for care are not available, the Judge should consider a downward departure.

Ochi is the financial and physical provider for multiple family members. Ochi has been financially facilitating, through the income that he derived from his legal employment, the

15

schooling fees for multiple members of his family including his sister and multiple cousins. One cousin in which their father just passed away and as discussed above. Additionally, Ochi's mother has been recently diagnosed with cancer. Ochi's father was murdered, and Ochi is the sole financial and physical caretaker of his mother. Ochi has taken it upon himself to provide care for his friends and family and has legitimately dedicated his life to gaining an education in order to secure employment to care for his family and friends. Ochi and his mother are extremely close and his incarceration would inevitably lead to her lack of support and care. Ochi's uncle was dependent on Ochi, as he would regularly send money to him back in Nigeria. During Ochi's incarceration, his uncle fell ill and passed away. Ochi solely blames himself for his uncles death as his uncle could not afford medical treatment or hospital care without Ochi's support. Ochi is fearful that the same demise would occur to his mother if he were to be incarcerated. Therefore, due to the need to care for his mother and his mother's diagnosis and health deterioration, it is respectfully requested that the Judge depart for the sentencing guidelines in order to allow Ochi to care for his ill mother.

Defendant's total offense level should continue to decrease.

*Accepting of Responsibility*

If a defendant demonstrates genuine remorse for their actions and accepts responsibility for the crime, a judge should consider a departure from the applicable sentencing guidelines.

In the matter at hand, Ochi is greatly remorseful for the consequences of his actions. Ochi was not aware of the illegality of his conduct until he was too deeply involved. Upon his suspicions, Ochi attempted to protect his friend, Danielle Liggins, by negotiating the return of the funds that were transferred to her since the amount was worrisome to Ochi. Ochi risked his wellbeing as well as his family's wellbeing by this attempt. Ochi continues to be remorseful and

realizes the great consequences of his actions. He has made it his life goal to reenter the financial industry and to prevent against crimes of this nature. Throughout this matter, Ochi has offered his help to the government on multiple occasions as to whether he could serve as an agent or an analyst to help trace the transactions. Ochi is a God-fearing man who believes in good and evil. His intent was not to commit harm but to solely provide for his family and care for those that he loves. Ochi has fully accepted responsibility for the consequences of his actions and deeply wishes to correct the wrongs that he has caused. He has even pled guilty to this current matter. He does not debate his wrongdoing and is genuinely remorseful for the harm that has resulted thereof.

*Under Duress*

If a defendant was essentially forced to commit a crime under duress or coercion, a judge should consider a departure from the applicable sentencing guidelines.

In the matter at hand, Ochi was unaware of the illegality of his conduct until he was too far involved in the alleged scheme. Upon Danielle Liggins receiving irregularly large transaction of funds, suspicions of illegal conduct began to arise for Ochi. Ochi was made to believe that his actions were completely legitimate and legal up until this instance. He was even sent picture of who appeared to be businessmen and women who were partaking in these investment transactions. Ochi believed he was doing legitimate work for Edeh and Umeh. It was when he became suspicious of the large sum of money and the unwillingness for Ozobu to rescend the transaction to Liggins that he realized he could be involved in an illegal matter. He wished to withdraw himself and his friends, Ms. Liggins, however, he was coerced otherwise by Umeh and Ozobu. Ozobu threatened his physical wellbeing as well as his family's safety. Ozobu sent Ochi his mothers phone number and send he would harm his family if he does not go forward with the

17

transfer of funds. After this transaction, Ochi removed himself from the entire operation for approximately a year. It was only when Umeh reached back out to Ochi in or about 2019, that he felt forced to partake in further transactions. However, he shortly stopped once again for good after such.

When Ochi became suspicious that his actions were potentially illegal, he attempted to stop his involvement with the operation. He was then threatened and coerced to continue the current transaction, however, after completing such he removed himself completely from any involvement with this scheme for approximately a year. This occurred in or about 2018. Ochi was approached in or about the middle of 2019, by Umeh, the same individual that previously threatened his family through his associate Ozobu. He felt as if he was forced to once again partake in this scheme. He did so for a very short period of time and stopped for good before the end of 2019. Ochi has not taken part in any alleged transactions since that time. For these reasons, and due to Ozobu's coercion of Ochi, it is respectfully requested that the Judge depart from the applicable sentencing guidelines to compensate for the fact that Ochi took part in these actions against his will after he suspected the nature of these transactions to be illegal.

Therefore, Defendant's offense level should continue to decrease.

*Totality of the Circumstances*

When viewing the totality of the circumstances concerning the matter at hand, it should compel the Judge to depart from the applicable sentencing guidelines. Ochi played a minor role in the operation. Ochi was unaware of the illegality of the operation and upon suspecting illegal conduct he attempted to withdraw himself, at that point he was coerced to participate, however, he inevitably removed himself completely after. Ochi merely took part in the operation to earn funds to better care for his family. Ochi is a well-educated young man with great potential. He

18

has never been incarcerated or charged with a prior offence in any regard.  He has not taken part in the alleged criminal activity for upwards of three and a half years (3.5). Ochi values are based on religion and family. Ochi is genuinely remorseful for his actions and hopes to remit his wrong to the community by pursuing a career in preventing the very crimes he unknowingly committed. Ochi is very unlikely to commit another offense, of this nature or another. Ochi wishes to remain out of prison and to care for his family. It is respectfully requested that, in consideration of the totality of the circumstances, the Judge depart from the applicable sentencing guidelines.

Therefore, Defendant's offense level should continue to decrease.

*Conclusion*

The Defendant's revised total offense level should be at a 23 due to the government wrongfully adding 4 points for Ochi's alleged role in the offense. Ochi was not an organizer or leader in the offense, therefore, the level of 27 as included in the Presentence Investigation Report should be decreased by 4, thus arriving at 23. This number should further be decreased due to the abovementioned factors to depart from the sentencing guidelines. Due to Ochi's minor role in the offense, the total level should be decreased by 3 points, arriving at 20. This level should continue to be decreased due to extraordinary family circumstances, undue duress, and the totality of the circumstances including his acceptance of responsibility and no prior criminal record. Thus, a total revised offense level around 15 would be more suitable as a baseline set forth to further deviate from. However, it should be noted that the Defense believes that incarceration is not the appropriate sentencing for the Defendant when considering the totality of the circumstances.

19

**FORFEITURE**

The Presentence Investigation Report alleges that, through this alleged scheme, Ochi obtained approximately $158,701.49 as his cut. The Government has since altered their position and has stated within their Sentencing Memorandum that the amount of forfeiture they are seeking is approximately $141,021.49. This contention is inaccurate. Ochi believes that he has received well below this alleged approximation. We will supplement the amount Ochi believes to have acquired as we are still reviewing the records and calculating an accurate total.

However, it shall be noted that the government has alleged that Ochi is an orchestrator of this entire operation, however, they allege that he has personally profited the least of any person they have included within The Scope of the Scheme. This is not consistent with an individual who would be orchestrating, managing, and running an operation. If Ochi was taking a cut from the individuals that the government alleges he recruited, he would not be profiting less than those individuals.

Additionally, the government has only offered examples and proof where Ochi has incurred a total amount of $5,184 in total profit from the numerous examples they have set forth. There is no basis for the calculations that the government has offered in alleging Ochi's cut of profits. Offering examples of Ochi receiving a cut or profits of some sort that equate to approximately $5,184 is vastly inconsistent with alleging he has received a total cut of $158,701 or $141,021.49. However, Ochi is willing to pay back any amount in which he has allegedly received as a cut in the form of restitution.

**RESTITUTION**

When considering the totality of the circumstances, the Defense believes that, in addition to a three (3) year probationary period, restitution would be most appropriate rather than any incarceration when considering the totality of the circumstances. When viewing the totality of the circumstances concerning the matter at hand, it should urge a Judge to incorporate restitution in sentencing rather than incarceration. Ochi played a minor role in the operation and was unaware of the illegality of the operation for a majority of his involvement. Immediately upon suspecting illegal conduct he attempted to withdraw himself, at that point he was coerced to participate, however, he inevitably removed himself completely after. Ochi merely took part in the operation to earn funds to better care for his family. Ochi is a well-educated young man with great potential. He has never been incarcerated or charged with a prior offense in any regard. He has not taken part in the alleged criminal activity for upwards of three and a half years (3.5). Ochi's values are based on religion and family. Ochi is genuinely remorseful for his actions and hopes to remit his wrong to the community by pursuing a career in preventing the very crimes he unknowingly committed. Ochi is very unlikely to commit another offense, of this nature or another. Ochi wishes to remain out of prison and to care for his family.

Incarceration would not be appropriate when considering the totality of the circumstances. The Defense believes that, in addition to a three (3) year probationary period, payment of restitution in an amount to be determined by the Court to be the proper sentencing.

**CONCLUSION**

The Defense recommends and believes that the following sentencing would be just and appropriate for the Defendant, Charles Ochi, based on the abovementioned reasons within this Memorandum: implementing a three (3) year probationary period and payment of restitution in an amount to be determined by the Court. During the three (3) year probationary period, the following conditions shall be applicable: submit to supervision by and report for supervision to the supervising probation officer, and also obey all directions and instructions of the supervising probation officer; continue to actively seek employment; continue to start an education program; surrender any passport to The Office of Probation and Pretrial Services; not obtain a passport or other international travel document; maintain residence and do not move without prior permission with travel restricted to Texas and Massachusetts (for court and attorney consultations only); avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including co-defendants, unless in the presence of counsel, and other individuals in which the Government determines (with the exception of Ochi's wife); receive medical or psychiatric treatment; only use his true name and is prohibited from the use of any aliases or false personal identifying information; not open, or facilitate the opening of, any bank accounts without permission of the Court; and not open, register, or incorporate, or facilitate the opening, registration, or incorporation of, any businesses.

It is respectfully requested this this Honorable Court take into consideration and implement this recommended sentencing for Defendant, Charles Ochi.

Respectfully submitted,
Charles Ochi,
By His attorney,

*Nicole Bluefort*

_____
Nicole M. Bluefort, Esq.
BBO # 681265
583 Chestnut Street, Unit 9
Lynn, MA  01904
Tel.: 781-593-1952
Fax: 781-593-0221

Dated: June 7, 2023

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Nicole Bluefort*
_____
Nicole Bluefort, Esq.